# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WEST SIDE SALVAGE, INC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: **3:13-cv-00363-MJR-PMF** |
| | ) |
| RSUI INDEMNITY COMPANY, | ) |
| | ) |
| Defendants. | ) |

## ORDER

**FRAZIER, Magistrate Judge:**

A discovery dispute conference was held on November 21, 2013. Attorney Matthew L. Preston was in attendance for Plaintiff West Side Salvage, Inc. ("West Side"). Attorneys Ryan J Rodman and Robert P Conlon were in attendance for Defendant RSUI Indemnity Company ("RSUI"). The parties have outstanding discovery disputes and have requested the Court's assistance in determining the appropriate scope of attorney-client privilege and work product protections in this case.

On April 27, 2010, a grain bin owned by ConAgra exploded in Chester, Illinois. Three individuals were badly injured as a result of the incident. ConAgra had previously hired West Side to clean the grain bin. West Side sub-contracted with A&J Bin Cleaning ("A&J") to complete the work. Three cases were filed in this district asserting various claims including negligence and *res ipsa loquitur* against ConAgra ("underlying litigation"). *See Jentz v. ConAgra*, No. 10-474 (S.D.Ill. 2010); *Becker v. ConAgra*, No. 10-952 (S.D.Ill. 2010); *Schmidt v. ConAgra*, No. 11-391 (S.D.Ill. 2011). ConAgra then filed a third-party complaints and/or cross-claims in each case against West Side and A&J. After the three cases were consolidated, a jury

1

found for the plaintiffs and against West Side for 21 million dollars in personal injuries. An additional three million dollar judgment was entered in favor of ConAgra and against West Side for property damage.

### A. Attorney-Client Privilege

In this case, both West Side and RSUI have objected to discovery requests seeking attorney-client communications and attorney work product generated during the underlying litigation. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense…" FED. R. CIV. P. 26(b)(1). The case is in federal court based on diversity jurisdiction so Illinois substantive law applies to privilege matters. *See* FED. R. EVID. 501. In 1991, the Illinois Supreme Court decided the case of *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co*., 579 N.E.2d 322 (Ill. 1991). That case was a declaratory judgment action to determine the rights and liabilities of the insureds and insurers under an environmental impairment liability policy after underlying litigation regarding hazardous waste sites was settled. *See id*. Insurers sought production of defense counsel for insureds' files in the underlying litigation. *Id*. at 325. Insureds refused production, claiming attorney-client privilege and attorney work product protections. *See id*.

The Illinois Supreme Court, first, found in *Waste Mgmt.* that a cooperation clause in the insurance contract imposed a broad duty of cooperation upon the insured and required it "to disclose contents of any communications they had with defense counsel representing them on a claim for which insurers had the ultimate duty to satisfy." *Id*. at 328. Secondly and likely of more importance here, the Illinois Supreme Court found in *Waste Mgmt.* that, under the "common interest doctrine," communications between either party to an attorney acting for two different parties who each have a common interest were "not necessarily privileged in a

subsequent controversy between the two parties." *Id*. "This is especially so where an insured and his insurer initially have a common interest in defending an action against the former, and there is a possibility that those communications might play a role in a subsequent action between the insured and his insurer." *Id*. (citations omitted). Although the typical case involving application of the common interest doctrine involved an attorney who "provided joint or simultaneous representation of the parties," the Illinois Supreme Court found that the doctrine could be properly applied "where the attorney, *though neither retained by nor in direct communication with the insurer*, acts for the mutual benefit of both the insured and the insurer." *Id*. at 329 ("It is the commonality of interests which creates the exception, not the conduct of the litigation") (emphasis added and citations omitted).

Ultimately, the Illinois Supreme Court in *Waste Mgmt.* found that, despite their now adversarial relationship, the insurers were entitled to production of the insured's files from the underlying litigation due both contractual obligations and the common interest doctrine. *See id*. In doing so, the court noted that "[i]n a limited sense, counsel for insureds did represent both insureds and insurers in both of the underlying litigations since insurers were ultimately liable for payment if the plaintiffs in the underlying action received either a favorable verdict or settlement." *Id*.

This case has arisen from a contract dispute concerning insurance coverage between West Side and RSUI. West Side alleges that Defendant RSUI violated the duties of good faith and fair dealing when Natalie Limber repeatedly refused to negotiate and offer RSUI's policy limits during settlement negotiations of the underlying litigation. West Side claims that RSUI was required to act in good faith because, under the terms of the policy with RSUI, West Side needed RSUI's consent to enter into a settlement of the underlying litigation. There was an opportunity

prior to judgment being entered against West Side for the total of West Side's policy limits (12 million dollars). Because RSUI allegedly failed to negotiate a settlement in good faith, West Side now faces judgments totaling 24 million dollars.

At the time of the explosion, West Side had a liability insurance policy with Colony Insurance ("Colony") with a limit of one million dollars per incident. Colony retained attorney John Schultz of the law firm Franke, Schultz and Mullen, P.C. to act its behalf in resolving the underlying litigation. West side also had an excess liability insurance policy with RSUI that had a limit of 11 million dollars per incident. RSUI retained attorneys Michael Knippen and Natalie Limber of Traub Lieberman Straus & Shrewsberry ("Traub firm") to act its behalf in resolving the underlying litigation. Finally, West Side also retained Kevin Visser to communicate with RSUI on its behalf in resolving the underlying litigation.

In the underlying litigation, it is apparent that all of these attorneys were acting for the mutual benefit of both West Side and RSUI. Applying the common interest doctrine to this case, West Side and RSUI obviously had privity of contract and, consequently, a common interest in defeating the underlying litigation. As a result, all communications with attorneys concerning that common purpose to/from either West Side or RSUI are not attorney-client privileged in this case. This includes communications to/from West Side to/from Schultz and Visser, as well as communications to/from RSUI to/from Knippen and Limber. However, this ruling does not serve abrogate the privileged nature of attorney-client communications concerning this case; this ruling is limited to communications concerning the underlying action. The parties may continue to assert objections to discovery consistent with this ruling.

RSUI has urged the Court to carve out an exception to its ruling for communications made to/from Knippen and Limber to/from RSUI concerning coverage issues. RSUI relies on an

Illinois First District Appellate Court case, *Illinois Emcasco Ins. Co. v. Nationwide Mut. Ins. Co.*, 913 N.E.2d 1102 (Ill.App.Ct. 2009), to support its position. Relying on language in *Waste Mgmt.*, the First District ruled in *Emcasco* that communications between an insurer and independent coverage counsel concerning potential liability in a subsequent action were privileged even when the common interest doctrine was otherwise applied to bar privilege of communications concerning the defense of the case. *See id*. at 1108.

The undersigned declines to make the requested exception. The record more than adequately demonstrates that the Traub firm, the law firm from which Knippen and Limber were employed, were primarily hired to defend RSUI's (and by extension, West Side's) interests in defeating the underlying litigation. Limber acted primarily in the role of claim manager for RSUI. RSUI now contends it would like to withhold certain communications where the Traub firm may have also advised RSUI concerning coverage issues. However, even the *Emcasco* case upon which RSUI relies makes clear that RSUI should have retained separate, independent coverage counsel to discuss the coverage issues if and when they arose. *See id*. The *Emasco* court suggested that even when separate coverage counsel was hired, their communications with the insurer may also be subject to discovery in a subsequent case because there was no guarantee that coverage counsel did not engage with discussions with the insurer regarding the defense of the underlying action. *See id*. The *Emasco* court suggested that *in camera* review of the separate coverage counsel's communications would be an appropriate course of action for a court following the *Waste Mgmt*. decision. *See id.* Unlike the scenario envisioned by the *Emasco* court, the Truab firm was retained to defend the underlying action and separate coverage counsel was not retained. RSUI may have mistakenly believed the communications were not subject to disclosure to West Side in a subsequent action when the coverage issues were discussed with the

5

Traub firm. If that were the case, it was incumbent upon the Traub firm, which should have been well aware of Illinois substantive law, to immediately inform RSUI that they needed to retain separate, independent counsel in order to prevent disclosure of the content of the communications to third parties. To take the approach now advocated by RSUI would be to sanction an avenue for defense counsel to both work for and against the interests of insureds in an underlying action. This is something the Court is not willing to do.

### B. Attorney Work Product

Finally, it is noted that federal law still controls with respect to the work product doctrine. *See* FED. R. CIV. 26(b)(3). "[D]ocuments and tangible things that are prepared in anticipation of litigation by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)" may only be discovered if it is 1) relevant and 2) "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. 26(b)(3)(A). However, "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation" are still protected even if disclosure of attorney work product is ordered. *See* FED. R. CIV. 26(b)(3)(B). Consistent with the above discussion of attorney-client privilege, disclosure will be generally ordered if the work product concerns the underlying litigation.

SO ORDERED.

DATED: November 25, 2013.

*/s/ Philip M. Frazier*
PHILIP M. FRAZIER
UNITED STATES MAGISTRATE JUDGE